517 So.2d 1194 (1987)
WRIGHT BROS. CORPORATION and John J. Wright
v.
Herman D. COLOMB, M.D., Margaret Colomb, and Uptown Square Wine Merchants, Inc.
No. CA-7647.
Court of Appeal of Louisiana, Fourth Circuit.
December 15, 1987.
Clay J. Calhoun, Jr., New Orleans, for appellants.
Charles A. Boggs, Robert I. Baudouin, J. William Vaudry, Jr., Jenny Brown LaCour, Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, New Orleans, for appellees.
Before GULOTTA, C.J., and SCHOTT and BYRNES, JJ.
GULOTTA, Chief Judge.
In this action for damages from the non-payment of the balance due on an oral construction contract, Wright Brothers Corporation, the general contractor, and John J. Wright, its president, appeal from two partial summary judgments dismissing their claims for consequential damages. One judgment dismissed the corporation's claims for loss of income, business reputation, and bonding capacity. The second judgment dismissed the plaintiff president's *1195 claims against one of the defendants, his former psychiatrist, for mental anguish, emotional suffering, psychic injuries, and medical expenses resulting from the defendant physician's alleged medical malpractice in engaging his patient in the construction contract. We affirm.
According to the petition, plaintiff John J. Wright was approached by his psychiatrist, Herman D. Colomb, M.D., who proposed that Wright Brothers Corporation act as the general contractor to build a retail store for Colomb to be called "The Winery At The Fair" on the site of the Louisiana World Exposition. Wright thereafter entered into an oral cost-plus construction contract, believing that he was dealing with Dr. Colomb personally and Uptown Square Wine Merchants, Inc., Colomb's corporation that owned and operated an established business known as "The Winery at Uptown Square". Toward the end of the construction, however, Dr. Colomb informed Wright he was not personally bound under the contract, but had acted only in a limited capacity as an officer, director, and shareholder of a newly formed company, Uptown Square Wine Merchants-WF, Inc., which was then insolvent.
After the $140,000.00 balance due on the contract was never paid, plaintiffs filed this suit for damages against Dr. and Mrs. Colomb and Uptown Square Wine Merchants, Inc. In addition to the unpaid balance, Wright Brothers Corporation sought $360,000.00 for loss of income in subsequent construction projects, and an additional $1,000,000.00 in damages to its business reputation in the community and loss of bonding capacity. Individually, John J. Wright sought $250,000.00 in damages for mental anguish, emotional suffering, and psychic injuries and an additional $25,000.00 in medical costs. He alleged that Dr. Colomb had breached his duties as plaintiff's psychiatrist by deceptively and fraudulently engaging him in the contract unrelated to his treatment, thereby jeopardizing his psychological stability.
In response to the petition, Dr. and Mrs. Colomb filed a "Motion for Partial Judgment on the Pleadings and Alternative Motion for Partial Summary Judgment", seeking to dismiss Wright Brothers Corporation's claims for loss of income, business reputation and bonding capacity. Citing LSA-C.C. Art. 2000,[1] defendants argued that since the suit was based on an unpaid construction contract, plaintiffs were limited to a claim for the $140,000.00 unpaid balance of the contract price, plus interest from the date the payment was due, but could recover no other damages.
Dr. Colomb also filed a motion for partial summary judgment seeking to dismiss John J. Wright's individual claim for mental anguish, emotional suffering, psychic injuries, and medical expenses under theories of negligence or medical malpractice. The defendant physician argued that his actions in the business deal were irrelevant to his former physician-patient relationship with Wright and did not constitute "treatment" in a medical sense.
The trial judge rendered judgments dismissing with prejudice Wright Brothers Corporation's claims "for damages for alleged loss of income, damaged business reputation and loss of bonding capacity" and further dismissing John J. Wright's individual claims against Dr. Colomb "for medical professional malpractice, for mental anguish, emotional suffering, psychic injuries and medical expenses...."
Appealing, plaintiffs contend that Wright Brothers Corporation is entitled to seek consequential damages based on well-pleaded allegations that Dr. Colomb was in bad faith and perpetrated a fraud by making material misrepresentations that induced plaintiffs to enter into the oral construction contract. Plaintiffs point out that under LSA-C.C. Art. 1997 an obligor in bad faith is liable for all the damages, foreseeable or *1196 not, that are a direct consequence of his failure to perform. They further cite LSA-C.C. Art. 1958, which provides that a party against whom recission is granted because of fraud is liable for damages and attorney fees.
John Wright likewise argues that he is entitled to recover consequential damages and medical expenses under LSA-C.C. Arts. 2315 and 2316 as a result of Dr. Colomb's malpractice as well as negligence. Wright contends that his former psychiatrist violated his fiduciary duty of care and principles of medical ethics and fiduciary duties of care by using his position of power to influence his patient, whom he had treated for work-related stress, when he knew or should have known of the likelihood of harm in this case. According to Wright, genuine issues of material facts preclude the partial summary judgment.

CONSEQUENTIAL DAMAGES TO CORPORATE PLAINTIFF
We find no merit to plaintiffs' contention that Wright Brothers Corporation is entitled to pursue its claim for consequential damages based on its allegations of bad faith and fraud.
Where money is due under a contract, the plaintiff obligee is normally limited to recovering the unpaid portion of the contract price plus interest from the date the payment was due and is not entitled to consequential damages for losses of credit reputation, business opportunities, or profits that would have been gained had the obligee been able to reinvest the proceeds due under the contract. LSA-C.C. Art. 2000; Martin v. T.L. James & Co., 237 La. 633, 112 So.2d 86 (1959); Benglis Sash & Door Co. v. Leonards, 387 So.2d 1171 (La. 1980).
Plaintiffs claim entitlement to consequential damages under LSA-C.C. Arts. 1958 and 1997 because they allege defendants acted in bad faith and perpetrated a fraud upon them. We do not agree.
Although the petition contains the words "fraud" and "misrepresentation", plaintiffs use these terms to allege that Colomb acted individually and not as a corporate representative. These allegations may state a basis for piercing the corporate veil but do not constitute allegations of fraud.
Paragraph 8 of the petition alleges that Dr. Colomb represented himself to Wright as the owner of the winery at Uptown Square with full authority to act on its behalf. Paragraph 10 states that Wright was led to believe that Colomb had the capacity to enter into binding agreements on behalf of Uptown Square Wine Merchants, Inc. in connection with his represented ownership of the store. Paragraph 13 alleges that Uptown Square Wine Merchants, Inc. "shifted operations and employees" between its Uptown location and the "Winery at the Fair" and "represented the subject site at the World's Fair as the `sister' location of the Winery at Uptown Square." According to Paragraph 28, defendants "deceptively represented to plaintiffs that Wright Brothers Corporation was dealing with Herman D. Colomb, M.D. personally and Uptown Square Wine Merchants, Inc., and plaintiffs did, in fact, agree to be engaged on that basis without the formality of a written contract and other protective measures prior to performance." Paragraph 29 alleges "fraud in the actions and representations of defendants and that said material misrepresentations were designed to deceive [plaintiffs] and to obtain unjust advantage under the guise of a newly organized deceptively named corporation and as a result caused plaintiffs to suffer substantial damages and to lose other substantial rights."
The thrust of plaintiffs' allegations is that Colomb induced plaintiffs to enter into the construction contract upon the understanding that Colomb and his established business, Uptown Square Wine Merchants, Inc., would be bound under the contract rather than the newly formed, insolvent company, Uptown Square Wine Merchants-WF, Inc. In essence, therefore, the petition alleges the doctrine of "alter ego" or "piercing the corporate veil", which permits a creditor to disregard a corporate entity and hold a related corporation or *1197 shareholder personally liable for corporate debts when the shareholder practices fraud or deceit upon the creditor through the corporation or, even in the absence of fraud, when the corporation ceases to be distinguishable from the shareholder. See Abraham v. Lake Forest, Inc., 377 So.2d 465 (La.App. 4th Cir.1979), writ denied 380 So.2d 99 and 100 (La.1980); Dillman v. Nobles, 351 So.2d 210 (La.App. 4th Cir. 1977); Majestic Floor Coverings, Inc. v. Lawson, 424 So.2d 504 (La.App. 5th Cir. 1982). Although these allegations, if proven, might permit plaintiffs to hold Dr. Colomb and Uptown Square Wine Merchants, Inc. liable under the contract, the theories of piercing the corporate veil and alter ego do not expand the measure of recovery or permit plaintiff to recover consequential damages. Plaintiffs' recovery is still limited to the contract price plus interest.
In so holding, we further note that the circumstances constituting fraud must be alleged with particularity. LSA-C.C.P. Art. 856. We further note that an action for fraud cannot be based simply upon promissory statements relating to future actions and that a mere failure to perform a promise or an agreement to do something at a future time, without more, is not evidence of fraud. See Automatic Coin Enterprises v. Vend-Tronics, 433 So.2d 766 (La.App. 5th Cir.1983); Colorado Milling & Elevator Co. v. Rapides Grocery Co., 142 So. 626 (La.App. 2nd Cir.1932). Having scrutinized the allegations of the petition in the instant case, we conclude that plaintiffs have failed to allege fraud or bad faith within the meaning of LSA-C.C. Art. 1958 and 1997 that would permit recovery for consequential damages.

THE MALPRACTICE CLAIM
We likewise find no error in the judgment dismissing Wright's claims "for medical professional malpractice, for mental anguish, emotional suffering, psychic injuries, and medical expenses...."
Although plaintiffs allege that Dr. Colomb used his "position of power" as a psychiatrist to engage his former patient in a business deal, it does not follow that the defendant physician thereby committed medical malpractice. As pointed out by defendants, the Louisiana Medical Malpractice Act statutorily defines medical malpractice as "any unintentional tort or any breach of contract based on health care or professional services rendered...." LSA-R.S. 40:1299.41(A)(8). The defendant physician's engagement of plaintiff in a business deal unrelated to earlier medical treatment or health care clearly does not fall within this statutory definition. Thus, plaintiffs' allegations that Dr. Colomb exerted undue influence on him and violated medical ethics by exploiting his position to influence his patient concerning the building contract fail to state a cause of action in medical malpractice.
Accordingly, the judgments are affirmed.
AFFIRMED.
NOTES
[1] LSA-C.C. Art. 2000 provides in pertinent part.

When the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, at the rate agreed by the parties or, in the absence of agreement, at the rate of twelve percent per annum. The obligee may recover these damages without having to prove any loss, and whatever loss he may have suffered he can recover no more.